**FILED**

UNITED STATES DISTRICT COURT

FEB 2 6 2007

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION


CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| RITA E. FIX, | * | CIV 06-3027 |
| | * | **2007 D.S.D. 2** |
| Appellant, | * | |
| | * | ORDER AND OPINION |
| -vs- | * | |
| | * | |
| FIRST STATE BANK OF ROSCOE and | * | |
| JOHN S. LOVALD, TRUSTEE, | * | |
| | * | |
| Appellees. | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**KORNMANN, U.S. DISTRICT JUDGE**

[¶1]    This case presents a series of acts and omissions by financial institutions, the First State Bank of Roscoe ("bank") and its holding company, Roscoe Community Bankshares, Inc., (collectively the "banks") that the court finds to be very troubling.

[¶2]    The standards of review by this court are well known. Matters of law are reviewed *de novo*. Findings of fact are to be upheld unless clearly erroneous.

[¶3]    In 1997, Rita E. Fix ("Fix") and her husband ("parents") entered into a contract for deed with their son and daughter-in-law ("grantees"), agreeing to convey the NW1/4NW1/4 of Section 26, Township 120, Range 71, Faulk County, SD, (sometimes referred to in this Order and Opinion as "the property") in return for the expressed consideration, money. Fix's husband died on September 17, 1998. The grantees at some point found themselves in financial difficulty, unable to pay debts to the bank or to the parents. The contract for deed expressly reserved a life estate to the parents, namely "Reserving in sellers a life estate in and to the house, outbuildings, and immediately surrounding yard." This retention of the life estate would have survived even the deeding in fee simple of the property to grantees, upon full payment being made (which, of course, never occurred).

[¶4]    Later, the banks, seeking to shore up their financial positions with grantees, requested the grantees to obtain fee title from Fix so that the property could be mortgaged to the bank. The

bank would then not only have a first mortgage position but would in effect merge into the deed the obligations the grantees had to otherwise pay Fix the consideration for the real property. As permitted by law and any contract for deed, the default and failure of grantees to pay the consideration (which had already occurred) would result in the grantees losing all rights to purchase the property. In other words, Fix was then in a position to foreclose and prevent the bank from ever having any opportunity to encumber the property. The banks apparently convinced Fix to not foreclose and thus the banks stepped ahead of Fix. Fix gave up very significant rights, apparently without any consideration to her other than the promises of the banks to honor her homestead rights. The banks caused a warranty deed to be drafted and executed by Fix, conveying the property to the grantees with no retention of a life estate and without any mention of a homestead right. Fix now claims that the banks sent her to their attorney (and discouraged the use of a Faulk County attorney) to accomplish all of this.

[¶5]    As an integral part of the transaction in connection with obtaining the deed, banks' president and chief executive officer, specifically on behalf of the bank and banks (the bank holding company not being a lender or mortgagee), drafted and caused to be delivered to Fix on or about March 12, 1999, the following letter: "This letter is to memorialize to you that are you deeding NW1/4NW1/4 26-120-71, Faulk County, South Dakota to Jeffrey F. Fix and Marie Fix. First State Bank of Roscoe will be taking a real estate mortgage on this real estate. In the event that for any reason the bank becomes the owner of the described real estate, you will have full right of possession to the home on the premises as long as you are living." Fix has at all times continued to occupy the property.

[¶6]    The bank claims that the language used by the banks granted Fix a "future life estate." That contention is rejected as a matter of law. The language constructively conditioned the warranty deed and was integral to Fix giving up her rights under the contract for deed. The banks, of course, did not convey anything to Fix but simply recognized that she was retaining her homestead rights or life estate, the same rights she had under the contract for deed.

[¶7]    Fix filed a Chapter 13 bankruptcy petition on March 24, 2004. Schedule C referred to the contract for deed and claimed it as exempt under SDCL 43-45-4. Schedule G referred to the contract for deed 40 acres homestead. Despite the fact that Fix's rights under the contract for

deed had been extinguished, all interested parties would have understood the reference. All parties also heard the discussion at the first meeting of creditors as to Fix claiming a life estate in or a homestead right in her home.

[¶8]   Fix gave notice of her claim to a homestead during the course of the bankruptcy. No timely objection was filed. The notice was sufficient and any claims to the contrary are barred. There is no question that, based on the record, all concerned knew from "day one" that Fix was claiming rights to remain in her home.

[¶9]   In November of 2005, the grantees as grantors conveyed the property to the bank in a non-merger deed of foreclosure. In December of 2005, the bank, without any notice to Fix's attorney or to Fix or any mention of her rights, conveyed the property by warranty deed to James and Pamela Baer ("Baers").

[¶10]   In April of 2006, Fix amended her bankruptcy schedule to claim a homestead exemption as to the property. No objections were filed to the exemption claim and the time to object has long since passed. As a matter of law, amendments are to be freely allowed. The amendment by Fix was timely. Her claim of exemption was entitled to protection.

[¶11]   The bankruptcy was converted to a Chapter 7 on June 28, 2005. Fix was discharged in bankruptcy on October 20, 2005.

[¶12]   The bank brought a civil suit against Fix. The complaint was dated October 18, 2005, and claims were made of conversion of bank accounts by Fix and her son. Nothing was referenced at all about the homestead property. A settlement agreement was orally agreed to in January of 2006. It was reduced to writing and was executed by Fix, her attorney, the bank, and the bank's attorney (a different attorney than had negotiated the settlement agreement but in the same law firm). Fix's attorney signed the settlement agreement on February 16, 2006. Fix signed on March 8, 2006. The bank and its attorney signed on March 14, 2006. Neither the holding company nor the trustee were parties to the settlement agreement.

[¶13]   In the settlement agreement, Fix agreed to execute a non-merger deed in lieu of foreclosure. The deed was to cover 240 acres plus the "North Half, **except NW1/4NW1/4** of Section 26, Township 120 North, Range 71, Faulk County, South Dakota (emphasis supplied)." Thus, the settlement agreement and the real estate description expressly excluded the ten acres on

3

which the house and outbuildings were located. What possible reason would there be to exclude the homestead if the parties (or at least the bank) expected that Fix was giving up all rights to the ten acres? Fix was not the record owner of the ten acres but careful drafting, especially with express knowledge of how the bank had acquired an interest in the ten acres and the promises made by the banks in connection with the ten acres, would have resulted in the ten acres being included and certainly not specifically excepted. To put it otherwise, what harm would result to anyone by Fix giving a deed to non-owned property (which, however, Fix had occupied since 1948) under all the facts known to everyone involved? It is true, of course, that the settlement agreement released bank "from any and all liability whatsoever . . . by reason of any transactions occurring between" Fix and the bank. "Occurring" is in the presence tense. It is not in the past tense or the future tense. No transactions were "occurring" between or among Fix, the bank and its employees at that time. The fact is also that the agreement and the promises to guarantee Fix her homestead rights had come from the bank and the bank holding company. If a release of the banks' obligations dating back to March 12, 1999, was intended, surely the settlement agreement would have included the bank holding company as a party. It did not. The attorney representing the bank would not have left the bank holding company "hanging out to dry." Nor would the bank have entered into the settlement agreement, knowing that the bank holding company was "hanging out to dry." Only later did the banks take the position that the agreement covered the homestead rights. It is undisputed that the banks had not disclosed to Fix or her attorney the conveyance to Baers which occurred in December of 2005.

[¶14]   The settlement agreement was on March 16, 2006, approved by the bankruptcy court but without any reference to homestead rights or a life estate being surrendered. There is no evidence that the bankruptcy judge was informed about such a very significant matter.

[¶15]   In March of 2006, Fix's attorney (not the attorney who had originally represented Fix in the bankruptcy matter and the settlement of the civil suit) brought suit against the banks and Baers in state court. A long-standing fiduciary relationship between Fix, her husband and banks was alleged. It is alleged that banks used their own attorney to represent Fix in connection with Fix giving up her contract for deed rights and deeding the property to grantees. It is alleged that the bank took title to the homestead property from Fix's son and daughter-in-law on November

4

8, 2005, and sold the property to Baers on December 17, 2005. Claims for the homestead, breach of fiduciary duties, rights to possession, intentional infliction of emotional distress, deceit, fraudulent misrepresentations, and punitive damages are made.

[¶16]   The bank sought an order from the bankruptcy court to enforce the order which had approved the settlement agreement, seeking also a temporary order and a permanent  injunction to stay the state court proceedings. The bankruptcy court granted all such relief and Fix has timely appealed. The questions have been thoroughly briefed.

[¶17]   The bankruptcy court held, as follows: (1) The bank could not grant in 1999 a contingent future life estate because the bank had no ownership rights in the house; (2) the settlement agreement released all claims of Fix against the bank under the 1999 letter from banks; (3) the settlement agreement does not cover any causes of action against the bank holding company, and the trustee may pursue those claims; (4) any claims against the holding company and the buyers of the house (Baers) belong to the trustee and will enure to creditors, "perhaps" less the value of the homestead interest of Fix; (5) Fix made no claim to the March 1999 letter as "exempt property"; (6) Fix had deeded the homestead property to her son and daughter-in-law without any reservation of a life estate or homestead right; (7) the trustee is not bound by the settlement agreement; (8) banks breached the March 1999 letter agreement; (8) Fix is free to pursue any causes of action she may have against banks or anyone else arising out of torts.

[¶18]   Some confusion is generated by discussions of a homestead right *vis a vis* a life estate. For the purposes of the rights of Fix, there is no practical difference.

[¶19]   In South Dakota, a homestead may be lost by clear abandonment of the property (i.e. clearly no intent to return at some time). Courts have been very careful to require very strong evidence before finding that a homestead right has been abandoned. Courts have examined whether the person has acquired another homestead. Such would be conclusive proof of abandonment. An intention to abandon land as a homestead is a fact, which may be disproved by the testimony of the party claiming the homestead. Warner v. Hopkins, 176 NW 746, 748 (SD 1920). The holder of a homestead right need not file or record any notice of declaration as to the right. A surviving spouse has homestead rights to continue to occupy the residence, even though the decedent spouse individually owned the property.

[¶20]   Even in the case of a debtor, such person, in the absence of any expression of a contrary intention, should be presumed to intend no further peril of the person's homestead right than necessity demands. Aisenbrey v. Hensley, 17 NW2d 267, 269 (SD 1945). It could not be said that necessity demanded Fix to in any way surrender her rights. Fix has been consistent in claiming her rights and has certainly not expressed any contrary intention. Public policy in South Dakota is clear and consistent, as is further discussed below.

[¶21]   Another fact is abundantly clear: all the rights and claims of the banks directly stem from the conveyance by Fix of the homestead/life estate real property which was made possible only by the recognition of the banks and the banks' explicit promises that the warranty deed was not unconditional but was secretly conditional. These goings-on illustrate the folly and dangerous nature of transactions involving real estate which are not made a matter of public record, side agreements being used without any such agreement being recorded to give notice to the public. The banks may have, in effect, defrauded the Baers.

[¶22]   Questions of public policy exist. "As with any contract, however, a court may not enforce a[n] . . . agreement that is contrary to public policy." W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). The "question of public policy is ultimately one for resolution by the courts." Id., citing cases. "Such a public policy, however, must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' Muschany v. United States, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)." Id.

[¶23]   I will set forth the law in South Dakota as to homestead rights and agreements. Article XXI, § 4, of the South Dakota Constitution provides: "The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws exempting from forced sale a homestead, the value of which shall be limited and defined by law, to all heads of families, and a reasonable amount of personal property, the kind and value of which is to be fixed by general laws." Fix was, at all times relevant, the head of the family under South Dakota law.

[¶24]   It has been said that the South Dakota Supreme Court favors the creation and protection of the family homestead. Ramsey v. Lake County, 14 NW2d 125, 126 (S.D. 1944). No inroads

upon the homestead exemption are to be recognized except such as are clearly in accord with the constitutional mandate. <u>Brodsky v. Maloney,</u> 105 NW2d 911, 914 (SD 1961). The right of the homestead is not an estate in land. *See* SDCL 43-31-17 and <u>Schutterle v. Schutterle,</u> 260 NW2d 341, 354 (SD 1977). The right of the homestead is a privilege granted by the legislature, in accordance with the constitutional mandate which consists of the "right of occupancy"; it does not constitute an estate in land and cannot pass by succession. <u>In re Clouse's Estate,</u> 257 NW 106, 108 (SD 1934). *See also* SDCL 43-31-27.

[¶25]   Homestead rights may be waived just as any other right may be. *See* SDCL 43-31-17 and <u>Schutterle</u>, *supra.* The statute, however, speaks of a "conveyance or encumbrance of a homestead." In the present case, Fix neither conveyed nor encumbered her homestead without the reservation of her homestead rights. In fact, her conveyance to her son and daughter-in-law was expressly conditioned on the written agreement of the banks (who were seeking to encumber the real estate which included the homestead) that Fix was retaining her homestead rights.

[¶26]   I find and hold that the public policy as to homestead rights is well defined and dominant in South Dakota. This is made clear by the laws and legal precedents and does not stem from general considerations of supposed public interests.

[¶27]   One of the important questions and requirements in South Dakota is whether the language claimed to be a waiver of the homestead rights is so clear that there can be no question concerning the intended effect of the pertinent provision in the agreement. <u>Schutterle</u>, *supra.* The bankruptcy court gave no consideration to this strict requirement and approached the matter somewhat in reverse, namely examining whether there was any ambiguity in the agreement as to whether a homestead right was to be waived or surrendered. The bankruptcy court erred in its manner of examination of the settlement agreement and the history of the case. It cannot be said as a matter of law that the settlement agreement waived homestead rights so clearly that there could be no question concerning the intent to do so and what was being waived. To the contrary, there was no waiver, much less a clear waiver.

[¶28]   The best that could be said was that ambiguity existed which would be construed against the drafter of the agreement, the attorney acting for the bank.

7

[¶29]   The district court will not enforce any claimed waiver of the homestead right unless the claimed waiver is "so clear that there can be no question concerning the intended effect" of the language in the agreement.  The homestead right was never mentioned in the agreement.  The legal description of the homestead was never included.  In fact, as already discussed, it was expressly excluded.  The earlier agreement between the banks and Fix (acknowledging her homestead rights, as part consideration for her deeding the real estate to her son and daughter-in-law) was never mentioned in the settlement agreement.  As a matter of law and public policy, none of this comes close to being sufficient.  The bankruptcy court was clearly in error in its approach to public policy and homestead law in South Dakota.

[¶30]   I believe all the lawyers involved in the drafting and execution of the so-called settlement agreement would have known homestead law and the public policy in South Dakota.  Most unfortunately, the scrivener who drafted the settlement agreement for the bank (but did not sign it) died in the prime of his legal career.  He was an excellent lawyer and very well respected.  I firmly believe and take judicial notice that, had he lived, he would have agreed with the lawyer representing Fix in connection with the settlement agreement that no party and no lawyer involved ever intended to have Fix abandon her homestead rights or her right to a life estate.

[¶31]   There is no need to be considering the parole evidence rule.  When you omit from a settlement agreement what is omitted here, the question is resolved.

[¶32]   There is no real necessity to examine whether Fix had some claim against the bank which she surrendered.  I will hold, however, as a matter of law, that Fix had no known claims against the bank in connection with any breach of the agreement from the banks as to her homestead rights until March of 2006 and such claims are not property of the bankruptcy estate.  Fix's claims arise from the South Dakota Constitution and the common law in this state.  Her homestead rights were against the world.  She had a right which was unchallenged until after the bankruptcy was closed and the settlement agreement had been executed.

[¶33]   Fix clearly had no known claims or causes of action against the banks until after the settlement agreement was signed and the banks had undertaken what is now alleged to be a campaign of harassment of this aging widow.

[¶34]   The state court claims include allegations that the bank stirred up a groundless criminal prosecution of Fix to convince her to deed her homestead to the bank and vacate her home. If the banks in fact believed that the settlement agreement destroyed Fix's rights, why would the states' attorney later be demanding a deed from Fix?  The first court appearance in the criminal prosecution was made on February 21, 2006. The criminal charges did not involve alleged transactions or criminal acts in Edmunds County but in two other counties. Yet the states' attorney in Edmunds County had the grand jury indict Fix. This appears to be highly improper and smacks of extortion. The daughter-in-law of Fix had also been indicted but was never required to appear in court. Only Fix was required to appear. The court appointed attorney for Fix demanded that the indictment be dismissed and the part-time states' attorney for Edmunds County, South Dakota, offered to dismiss the indictment if Fix would agree to deed her homestead property to the bank. The court appointed attorney rejected this "offer" out of hand. There is nothing in the record to indicate that the offer was ever conveyed to Fix. It is clear from the record what the court appointed attorney for Fix thought about these goings-on. He was clearly appalled. The criminal prosecution was ultimately, after substantial delay but without any further court proceedings, dismissed by the states' attorney. The question was raised, and correctly so, whether the states' attorney was acting on behalf of the county or the banks.

[¶35]   The same states' attorney as a private practioner later represented Baers, demanding in March of 2006 that Fix vacate the property so that the Baers would have full rights to occupancy and use of the property. The letter of March 17, 2006, informed Fix for the first time that the bank had in December of 2005 sold the property to Baers without recognition of the rights of Fix.

[¶36]   The bankruptcy court also erred in entering the order as to the motion in limine which excluded the testimony of attorneys Sommers (the court appointed attorney for Fix) and Gerry (Fix's attorney in the bankruptcy proceeding and in connection with the settlement agreement). Such evidence was admissible in connection with questions of estoppel being applied against the bank. This is the case, even given the partly erroneous rulings of the bankruptcy court.

[¶37]   The South Dakota Supreme Court has explained what is necessary to create an estoppel. The court is to examine whether there was some act or conduct upon the part of a party to be estopped which has in some way misled the party in whose favor the estoppel is sought. Did the bank cause Fix to part with something of value or do some other act relying upon the conduct of the bank, thus creating a condition that would make it inequitable to allow the guilty party to

9

claim what would otherwise be its legal rights? A-G-E Corporation v. South Dakota Department of Transportation, 2006 SD 66, 719 NW2d 780, relying in part on Western Casualty and Surety Co. v. American Nat'l. Fire Insurance Company, 318 NW2d 126 (SD 1982). Estoppel requires concealment, misrepresentation, or conduct at odds with known material facts. Action Mech., Inc. v. Deadwood Historic Pres. Comm'n., 2002 SD 121, 652 NW2d 742. The bank should be estopped from any relief. At a minimum, the bankruptcy court should have considered this question and received evidence as to the issue.

[¶38]   A notice to quit dated December 20, 2006, served against Fix by Baers has been included in the appendix by Fix. The bank has filed and served a motion (Doc. 13) to strike such document since the same was not before the bankruptcy court. The bank's president, in his testimony, disclaimed any efforts to remove Fix from her home. The notice to quit tells us otherwise, at least so far as the Baers are concerned. In the interests of justice, the motion to strike should be denied.

[¶39]   An enormous amount of legal fees, paper, and time on the part of the attorneys, judges, and others has already been expended here. One would wonder why a possible life estate in 10 acres of land in Faulk County, SD, held by a person who is 80 years of age living in a rural South Dakota home which she has occupied since 1948 could possibly generate all this. Common sense would seem to dictate otherwise. As Voltaire (Francois Marie Arouet) aptly expressed, however, in 1764 in "Dictionnaire Philosophique", "Common sense is not so common." Although I should not give legal advice, it would frankly appear to the court that the banks have failed to recognize the old adage: "when in a hole, at some point stop digging."

[¶40]   Now, therefore,

[¶41]   IT IS ORDERED, ADJUDGED, AND DECREED, as follows:

        1) The settlement agreement does not waive or destroy the homestead and life estate interests of Fix.

        2) To the extent the settlement agreement attempts to waive or destroy the homestead and life estate interests of Fix, the same is void as against public policy.

        3) The homestead and life estate consists of the house, outbuildings, and immediately surrounding yard located on the Northwest Quarter of the Northwest Quarter of Section 26, Township 120 North, Range 71, West of the 5th P.M., Faulk County, South Dakota.

4) Fix clearly claimed the above described property as her homestead in the bankruptcy proceedings without objections and the time to object has expired.

5) During the course of the bankruptcy proceedings and until March of 2006, Fix had no knowledge of any claim she might have or did have against the banks.

6) The trustee has no valid claims to the subjects of the lawsuit filed by Fix in state court.

7) The judgment of the bankruptcy court holding that the settlement agreement did not release any claims against the bank holding company, Roscoe Community Bankshares, Inc., that the trustee is not bound by the settlement agreement, and that Fix is free to pursue any causes of action in tort that she may have against the Roscoe Community Bankshares, Inc., the First State Bank of Roscoe, and any other persons, is affirmed.

8) The balance of the judgment of the bankruptcy court granting the motion in limine and the permanent injunction as entered on November 30, 2006, is reversed and held for naught.

9) Fix, her attorneys, and the state court are free to proceed with the state court action.

10) The motion to strike (Doc. 13) is denied.

11) Requests for oral argument are denied.

12) Costs shall be taxed against the bank.

[¶42]   Dated this 26th day of February, 2007.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY:

                    DEPUTY

(SEAL)

11